NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JOHNATHAN ANDREW DOODY, *Petitioner*.

No. 1 CA-CR 25-0416 PRPC

FILED 05-20-2026

Petition for Review from the Superior Court in Maricopa County
No. CR 1992-001232
The Honorable Joseph C. Kreamer, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Sandra Day O'Connor College of Law, Phoenix
By Randal McDonald, Robert J. Dormady, Andi Humphreys,
Thomas J. Pierce (certified limited practice student), Alexandra LaPose
(certified limited practice student)
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Brittany Rummel
*Counsel for Respondent*

## MEMORANDUM DECISION

Presiding Judge Daniel J. Kiley, Judge D. Steven Williams, and Judge Cynthia J. Bailey delivered the decision of the Court.

**PER CURIAM**:

**¶1**        Petitioner Johnathan Andrew Doody seeks review of the superior court's order dismissing his petition for post-conviction DNA and forensic testing pursuant to A.R.S. §§ 13-4240 and -4241. We have considered the petition for review and, for the reasons stated, grant review and deny relief.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**        In 1991, nine people were found shot to death inside a Buddhist temple in Arizona. After police recovered the rifle that was determined to be the murder weapon, its owner, Rolando Caratachea, stated he had lent it to Doody and Alessandro Garcia shortly before the murders. The police interrogated Doody and Garcia. Garcia told an investigator that Doody shot the victims after he and Doody entered the temple with the intent to commit a robbery. Garcia pled guilty and agreed to testify against Doody. *See State v. Doody*, 187 Ariz. 363, 366–67 (App. 1996).

**¶3**        After a jury trial,[1] Doody was convicted of nine counts of first-degree murder, nine counts of armed robbery, and one count each of first-degree burglary and conspiracy to commit armed robbery and/or first-degree burglary. The superior court sentenced Doody to nine consecutive terms of life imprisonment without the possibility of parole for twenty-five years for the murder convictions, and to a consecutive aggregate term of twenty-four years' imprisonment for the other convictions. We affirmed Doody's convictions and sentences on appeal. *State v. Doody*, 1 CA-CR 14-

---

[1]        This was Doody's third trial. We affirmed Doody's convictions and sentences after his first trial, *Doody*, 187 Ariz. at 366, but the United States Court of Appeals for the Ninth Circuit reversed those convictions in *Doody v. Ryan*, 649 F.3d 986 (9th Cir. 2011), finding his confession to police was involuntary and in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). A second trial in 2013 resulted in a mistrial.

0218, 2015 WL 6876776, at *6, ¶ 22 (Ariz. App. Nov. 10, 2015) (mem. decision). Doody has unsuccessfully sought post-conviction relief twice.

¶4            In 2024, Doody filed a motion for post-conviction DNA and forensic testing of ash trays, cigarette butts, soda cans, and latex gloves recovered from the crime scene and a brown leather glove found in Caratachea's car. Doody claimed these items still exist in evidence and were not subject to modern DNA or forensic testing. He asserted his convictions rested on Garcia's testimony, and that further testing would undermine that testimony by disproving Garcia's statement that neither Caratachea nor another person was present at the scene. Doody claimed the court must order testing under §§ 13-4240(B) and -4241(B), asserting a reasonable probability exists that he would not have been prosecuted or convicted if those results had been obtained through testing. He also alternatively argued the court may order DNA testing under § 13-4240(C).

¶5            The superior court held oral argument on the motion. The court noted Garcia's testimony was inconsistent in many ways, including as to who was present at the scene. The court also noted, however, that substantial additional evidence supported Doody's convictions. Among other things, the court noted, Doody was found in possession of "multiple items stolen from the temple" and that he made a statement to his girlfriend about having "kill[ed] people for money." The court found that evidence of a third person's presence, other than Caratachea, would not be exculpatory because it would not undermine Garcia's testimony or exclude Doody from the scene. The court acknowledged that evidence supporting Caratachea's presence might have some exculpatory value given his role in this case but concluded such a result would have minimal effect on the totality of the evidence and would not satisfy a reasonable probability standard. The court then denied Doody's motion.

¶6            Doody seeks review of the dismissal of his request for DNA and forensic testing. We grant review under A.R.S. § 13-4239(G). We have jurisdiction under A.R.S. § 13-4239(C) and Arizona Rule of Criminal Procedure 32.16.

## DISCUSSION

¶7            DNA and forensic testing under §§ 13-4240 and -4241 are forms of post-conviction relief, as both statutes authorize defendants to seek post-conviction forensic testing. *See State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 20 (2012). We review the superior court's denial of post-conviction relief for an abuse of discretion. *Id.* at ¶ 19. We review the court's legal

conclusions, including its interpretation of statutes and court rules, de novo. *State v. Anderson*, 257 Ariz. 226, 230, ¶ 13 (2024). We will affirm the court's ruling "if it is legally correct for any reason." *State v. Roseberry*, 237 Ariz. 507, 508, ¶ 7 (2015).

¶8 On review, Doody argues the superior court erred in denying his motion for DNA and forensic testing under §§ 13-4240 and -4241.

¶9 Sections 13-4240(B) and -4241(B) require the superior court to order DNA or forensic testing if the court finds: (1) "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through" DNA or forensic testing; (2) the evidence still exists and is available for testing; and (3) the evidence was not previously subjected to the type of DNA or forensic testing requested that could resolve an issue not addressed by prior testing. A.R.S. §§ 13-4240(B), -4241(B). Additionally, the court "may" order DNA testing if the latter two conditions are met and there is a "reasonable probability" either that "[t]he petitioner's verdict or sentence would have been more favorable if the results of [DNA] testing had been available at the trial leading to the judgment of conviction" or that DNA testing "will produce exculpatory evidence." A.R.S. § 13-4240(C).

¶10 "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). It requires "more than a mere possibility" but less than a showing that the result is "more likely than not." *State v. Lee*, 142 Ariz. 210, 214 (1984) (citation modified).

¶11 At trial, Garcia testified he initially lied to police during the interrogation but later told the truth to obtain leniency, stating that he and Doody committed the murders. He further testified that, because the police did not believe him, he also implicated Caratachea and several other people. The State presented additional evidence supporting Doody's convictions, including other witnesses' testimony and items taken from the temple that linked Doody to the murders.

¶12 Considering Garcia's testimony and the other supporting evidence, identifying a third person's DNA or fingerprint, as the superior court reasonably found, would not undermine Garcia's testimony about Doody's participation in the murders, but merely show that someone else was also present. Although discovering Caratachea's DNA or fingerprint would contradict portions of Garcia's testimony, it would add little to what the jury already knew, as Garcia had credibility issues and his initial

4

statements implicated Caratachea. Such evidence would not exclude Doody from the scene or exonerate him on involvement in the murders.

¶13        Doody argues DNA testing should still be granted even if the potential testing results do not exclude him from the scene or absolve him of any potential accomplice liability. He relies on *Gutierrez*, which is inapposite here. In *Gutierrez*, DNA testing had already been ordered and produced favorable results, and the issue was whether the superior court was required to hold a hearing under § 13-4240(K) regarding those results. 229 Ariz. at 575–76, ¶¶ 14–18. Here, by contrast, the question is whether DNA or forensic testing is warranted in the first instance. And the superior court correctly recognized that testing results do not have to be exonerating but concluded the proposed results would not create a reasonable probability.

¶14        Under the totality of the circumstances presented, we conclude the superior court did not abuse its discretion in finding that there was no reasonable probability Doody would not have been prosecuted or convicted if testing had revealed Caratachea's or a third person's DNA or fingerprint.

¶15        Doody further contends the superior court erred by failing to apply the permissive legal standard under § 13-4240(C) and "by providing no legal basis for denying relief under this provision."

¶16        We independently review the record to determine whether a tenable ground exists to support the superior court's ruling and may affirm if the record reveals a permissible basis even if the court did not rely on it. *See State v. Thompson*, 169 Ariz. 471, 472–73 (App. 1991); *see also City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) (reviewing the record for any tenable grounds for affirming when the trial court did not explicitly exercise its discretion in its ruling).

¶17        Here, unlike in *Thompson* and *Geyler*, the record reveals a basis for the superior court's decision. The record shows both parties addressed § 13-4240(C) at oral argument and the superior court considered and rejected testing, concluding that with the totality of the evidence against Doody and the "moderate, if not minimal impact on Garcia's effectiveness as a witness if Caratachea's DNA or fingerprints were found," the proposed DNA results would not create a reasonable probability that Doody's "verdict or sentence would have been more favorable." Because the record supports the court's ruling, and subsection (C) is discretionary even when

its conditions are met, Doody fails to show the court abused its discretion by declining to order testing.

## CONCLUSION

¶18        We grant review and deny relief.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR